## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |  |
|---|---|---|
| IN RE: PUERTO RICAN CABOTAGE ANTITRUST LITIGATION | ) ) ) ) ) ) | **Master Docket  No. 08-md-1960 (DRD)** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) ) | |

## CLASS PLAINTIFFS' MEMORANDUM SUBMITTED AT REQUEST OF COURT REGARDING PRELIMINARY APPROVAL OF HORIZON SETTLEMENT CLASS

**TO THE HONORABLE COURT AND TO ALL DEFENDANTS AND THEIR COUNSEL OF RECORD:**

Pursuant to this Court's Order dated September 14, 2009 (Dkt. 439) (hereinafter "Order"), Class Plaintiffs respectfully submit this memorandum regarding preliminary approval under Rule 23(b)(3) of the proposed class for purposes of their settlement with the Horizon Defendants (the "Horizon Settlement Class" or "Class").

## INTRODUCTION

On August 14, 2009, the Court held a hearing regarding Plaintiffs' motion for preliminary approval of a proposed settlement between Plaintiffs and the Horizon Defendants (the "Settlement").  Plaintiffs seek conditional certification of the Horizon Settlement Class solely for purposes of effectuating the Settlement, without prejudice to the rights of the Non-Settling Defendants to oppose future certification of a class with respect to Plaintiffs' claims against them.  In this memorandum Plaintiffs address the Court's concerns regarding

72938.1

certification of a settlement class.  The Horizon Defendants will be submitting a separate brief to address the other concerns identified by the Court.

At the outset, Plaintiffs wish to correct the misleading impression created by the Non-Settling Defendants that detailed factual findings are necessary to support settlement class certification decisions.  In truth, where the claims are as straightforward and uniform as those of Plaintiffs here, courts readily certify settlement classes absent any detailed factual record.  As discussed below, each of the requirements for certification of the Horizon Settlement Class is readily satisfied on the existing record.

## ARGUMENT

**I.    PLAINTIFFS' STRAIGHTFORWARD PRICE-FIXING CLAIMS MAKE THE HORIZON SETTLEMENT CLASS APPROPRIATE FOR CERTIFICATION WITHOUT THE NEED FOR ADDITIONAL DISCOVERY AND FULL-BLOWN LITIGATION.**

Courts have long recognized that horizontal price-fixing cases are especially well suited for class treatment.  *See*, *e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging … violations of the antitrust laws.").  *See also In re Carbon Black Antitrust Litig.*, No. Civ.A.03-10191-DPW, MDL NO. 1543, 2005 WL 102966, at *9 (D. Mass. Jan. 18, 2005) ("In fact, it has been noted that the common question of the existence of a horizontal price-fixing conspiracy has almost invariably been found to satisfy Rule 23(b)(3).").

The Non-Settling Defendants' arguments that the Court cannot certify the Horizon Settlement Class rest on the false premise that a court may not certify a settlement class in advance of full discovery on the merits.  Understandably, the Non-Settling Defendants cite no authority to support the proposition that consideration of the underlying merits is proper under Rule 23.  To the contrary, the law is clear that a district court need only assess the factual merits

of a case "to the extent that the merits overlap the Rule 23 criteria." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.2d 6, 24 (1st Cir. 2008).  As explained in more detail below, no such overlap exists here.

Moreover, the First Circuit has limited need for district courts to perform a "searching inquiry" into the merits to those situations "where there are not only disputed basic facts, but also a novel theory of legally cognizable injury." *New Motor Vehicles*, 522 F.2d at 25.  *See also id.* at 26 ("We do not need to resolve now whether 'findings' regarding the class certification criteria are ever necessary, but we do hold that when a Rule 23 requirement relies on a novel or complex theory as to injury, as the predominance inquiry does in this case, the district court must engage in a searching inquiry into the viability of that theory and the existence of the facts necessary for the theory to succeed.").  Given this guidance, the question to be decided by the Court is whether the antitrust impact of Defendants' alleged conduct centers on common facts and law, as required by Rule 23—*not* whether Plaintiffs will ultimately prove antitrust impact (or any other element of their claims) at trial.  *See Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)).

In contrast to the claims at issue in *New Motor Vehicles*, Plaintiffs allegations present no novel or complex theories.  Plaintiffs have alleged a typical price-fixing conspiracy that affected shipping rates throughout the relevant market.  *See*, *e.g.*, Third Am. Compl. ¶¶ 55, 168, 204-06. Further, Plaintiffs' damages are measured by the amount of the illegal overcharge, the usual measure of antitrust damages. *Id.* ¶¶ 230, 235.  In short, Plaintiffs allege *no* facts or legal theories

that distinguish this case from the host of similar price-fixing cases that have been certified as class actions.

Moreover, while the most difficult class certification requirement for plaintiffs to meet in most antitrust cases is the predominance of common proof of antitrust impact, plaintiffs can apply the *Bogosian* presumption of class-wide impact to allege a market-wide price fixing conspiracy, as Plaintiffs do here.  Under *Begosian*, once plaintiffs prove that a conspiracy existed and raised prices (issues that easily lend themselves to common proof), it may be presumed that the conspiracy affected all class members who did business with the conspirators.  *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3d Cir. 1977) (cited with approval in *New Motor Vehicles*, 522 F.3d at 29 (recognizing presumption of impact, but noting plaintiffs in that case disclaimed any intent to rely on presumption)).  *See also In re Linerboard Antitrust Litig.*, 305 F.3d 145, 153 (3d Cir. 2002) ("If, in this case, a nationwide conspiracy is proven, the result of which was to increase prices to a class of plaintiffs beyond the prices which would obtain in a competitive regime, an individual plaintiff could prove fact of damage simply by proving that the free market prices would be lower than the prices paid and that he made some purchases at the higher price."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 29-30 (D.D.C. 2001) ("[W]hen a defendant is alleged to have participated in a nationwide price-fixing conspiracy, impact will presumed as a matter of law, and the predominance requirement of Fed. R. Civ. P. 23(b)(3) will be satisfied."); *In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 166 (S.D.N.Y. 2000) ("Price fixing conspiracies, at least to the extent they succeed in fixing prices, almost invariably injure everyone who purchases the relevant goods or services.").

Examples of similar antitrust cases in which liability and antitrust impact were readily susceptible to class-wide proof (as they are here) are instructive.  In these cases, courts have

found sufficient reason to certify a class based on the overwhelmingly common nature of the claims themselves, without any need to delve into minutiae revealed through discovery.

One such case is *In re Insurance Brokerage Antitrust Litig.*, Nos. 07-1759 *et al*, 2009 WL 2855855 (3d Cir. Sept. 8, 2009).  There, the Third Circuit weighed objections to certification of a settlement class based on commonality, typicality, and predominance, similar those raised by Non-Settling Defendants.  The court's rulings on these elements were based on the pleadings alone (even though limited discovery had taken place), requiring no discussion of particular facts revealed in discovery.  *See id*. at *16 (listing common issues and, addressing typicality, finding that "the claims made by named Plaintiffs and those made on behalf of the Settlement Class Members are indistinguishable…. These claims arise in each case from the same course of action taken by the Zurich Defendants."); *id.* at *17 (as to predominance, reasoning that "because the 'clear[ ] focus' of an antitrust class action is 'on the allegedly deceptive conduct of defendant' and not on 'the conduct of individual class members,' common issues necessarily predominate.'") (quoting district court opinion, further citation omitted); *id.* at *19 (holding that common issues predominated regarding the elements of plaintiffs' Sherman Act claims); *id.* at *28 (discussing predominance for another settlement).

Similarly, in *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, a court in this Circuit ruled on the elements of class certification without reference to detailed factual findings or expert reports.  *See* 216 F.R.D. 197, 204-06 (D. Me. 2003).  In particular, with respect to predominance, the court found that "[i]t is clear that individual issues in this case will not overwhelm the common questions of law or fact, because the central question is whether the defendants conspired to fix prices and, if so, by how much."  *Id*. at 205.  And the district court's two opinions in *Insurance Brokerage* also relied solely on the pleadings in determining whether

the elements of Rule 23 were met.  *See* 2007 WL 2589950 (D.N.J. Sept. 4, 2007); 2007 WL

542227 (D.N.J. Feb. 16, 2007).  Neither of them considered facts unearthed during discovery.

        The critical feature shared by *Compact Disc* and *Insurance Brokerage* is that they both

addressed settlement classes.  While settlement classes must also meet the requirements of Rule

23, it is important to bear in mind that the policies underlying Rule 23 are implicated in a slightly

different, but critical, way than for litigation classes.  In particular, in applying Rule 23(b)(3)'s

elements of predominance and superiority, a court considering a litigation class will look to the

following factors to guide its analysis:

> (A) the interest of members of the class in individually controlling the prosecution
> or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already
> commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
>
> (D) the difficulties likely to be encountered in the management of a class action.

Fed.R. Civ.P. 23(b)(3).  By contrast, when "[c]onfronted with a request for settlement-only class

certification, a district court need not inquire whether the case, if tried, would present intractable

management problems, for the proposal is that there be no trial."  *Amchem Products, Inc.*, 521

U.S. at 620.  *See also Ins. Brokerage*, 2009 WL 2855855 at *20 (contrasting litigation class, in

which "the certification inquiry was set against the backdrop of an impending trial," with

settlement class certification).  Unlike issues arising for settlement classes, most of the

arguments opposing litigation classes—such as those focusing on the different sizes of class

members' claims or differing surcharges imposed by different co-conspirators—summon the

bogeyman of a protracted trial process, suggesting that differences between Class members

would require them to present individualized proof of their claims *at trial*.  Settlement classes do

6

not present these manageability concerns.  Here, none of the Plaintiffs or other class members will be called upon to present such proof.

## II.     THE SETTLEMENT CLASS SATISFIES THE ELEMENTS OF RULE 23.

As demonstrated in Plaintiffs' previous filings, the Horizon Settlement Class easily meets the elements of Rule 23(a) and (b)(3).  To review, the following elements are required to certify a damages class:

Under Rule 23(a),

(1) Numerosity
(2) Commonality
(3) Typicality
(4) Adequacy of class representatives and counsel

and under Rule 23(b)(3),

(1) Predominance
(2) Superiority

None of the Non-Settling Defendants contests numerosity, commonality, adequacy of class counsel, or superiority.  As Plaintiffs' Motion for Preliminary Approval and their Third Amended Complaint make clear, these tests are easily met in this case.  *See* Pl. Mem. at 19 & Third Am. Compl. ¶¶  218-19, 85, 87-88 (numerosity); Pl. Mem. at 19-20 & Third Am. Compl. ¶¶ 44-216, 222, 226-35 (commonality); Pl. Mem. at 20-21 & Third Am. Compl. ¶ 221 (adequacy of class counsel); Pl. Mem. at 22-23 & Third Am. Compl. ¶ 225 (superiority).  The Non-Settling Defendants' arguments challenge only Rule 23(a)'s requirements of typicality and adequacy, and Rule 23(b)'s predominance requirement.

Plaintiffs next review the standards governing these contested elements and the authorities that reject the Non-Settling Defendants' arguments.

A.      **Typicality and Adequacy - 23(a)(3) & (4).**

The requirements that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (Rule 23(a)(3)) and that "the representative parties will fairly and adequately protect the interests of the class" (Rule 23(a)(4)) are easily met here.

The essence of typicality is that the named plaintiffs' claims must be based on the same legal theory and facts as those of the absent class members. *See Compact Disc*, 216 F.R.D. at 205 (typicality satisfied "if the representative plaintiff's claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members.") (quoting *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d 231, 241 (E.D.N.Y. 1998)).  Here, the named Plaintiffs are all direct purchasers of Puerto Rican cabotage services from Horizon and the Non-Settling Defendants.  They properly seek to represent a class of direct purchasers: namely, "[a]ll persons (excluding governmental entities, Defendants, coconspirators, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who purchased Puerto Rican Cabotage directly from any of the Defendants or their coconspirators, or any present or former parent, subsidiary or affiliate thereof, at any time during the period from at least May 1, 2002, until April 17, 2008."  Third Am Compl ¶ 217.  The representatives' claims are thus identical to those of the other members of the Horizon Settlement Class.

Adequacy of representation is another low hurdle.  It is present as long as "the interests of the representative parties do not conflict with the interests of any class members." *Compact Disc*, 216 F.R.D. at 205.  *See also In re Ready-Mixed Concrete Antitrust Litig.*, No. l:05-cv-00979-SEB-JMS, 2009 U.S. Dist. LEXIS 82043, at *53 (S.D. Ind. Sept. 9, 2009) (finding adequacy where "[e]ach representative, and each class member, has alleged an antitrust injury resulting from Defendants' conspiracy, and each has an interest in demonstrating Defendants'

liability as well as in recovering under the antitrust laws."). Courts have "generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 514 (S.D.N.Y. 1996). A hypothetical or speculative conflict is not sufficient to defeat class certification. *See Kohen*, 2009 WL 1919013, at *7. The Horizon Settlement Class representatives, all of whom paid the same illegally price-fixed rates as the rest of the Class members, have exactly the same incentive as any other Class member: to maximize recovery for the Class.

In particular, Crowley has identified no actual conflict. Crowley began by pointing out that *some* (not all) named Plaintiffs are NVOCCs, but failed to explain how these Plaintiffs' interests are opposed to those of the other Class members. *See* Crowley Opp. at 8. When pressed, Crowley offered several weak explanations. First, it claimed the base-rate freeze would allow NVOCCs to raise prices charged to other class members (Crowley Surreply at 15), despite the obvious logical flaw that a *lower* base rate would allow NVOCCs to charge *lower* rates, not higher ones. Second, Crowley claimed that "competitor-plaintiffs may pose special problems" such as fund distribution, but did not identify any such problems or explain how the standard claims procedure set forth in the Agreement could possibly vary between NVOCCs and other plaintiffs. *Id*. at 16.[1] In any event, NVOCCs are customers, not competitors, of Defendants. *See* Pl. Sur-Surreply at 6-7, 16-17. And third, Crowley claimed that NVOCCs, as competitors of

---

[1] Although Crowley's argument is under-developed, plaintiffs direct the Court to *In re Bulk [Extruded] Graphite Prods. Antitrust Litig*., NO. CIV 02-6030 WHW, 2006 U.S. Dist. LEXIS 16619, at *20-25 (D.N.J. Apr. 4, 2006), where the court rejected a much more clearly articulated set of objections to the adequacy of class representatives who were actual competitors. Clearly, there is no per-se bar preventing an entity that competes with a defendant from serving as a class representative.

Defendants, have an interest in harming Defendants' competitive position.  Crowley Opp. at 18 n.11.  The flaws of the Non-Settling Defendants' "competitive injury" argument have been addressed in previous briefing.  Suffice it to say that *even if* NVOCCs were competitors, and *even if* the base-rate freeze option were harmful to Non-Settling Defendants, Crowley fails to state how this rate freeze harms *the rest of the Class*, which is the crux of Rule 23's adequacy prong.

The Third Amended Complaint, filed on September 23, further demonstrates that the NVOCC Class representatives are no different from the non-NVOCC representatives and Class members.  It alleges that the cartel specifically targeted NVOCCs along with all other victims. Third Am. Compl. ¶¶ 60-61.  Indeed, as the Complaint alleges, Defendants implemented their anticompetitive scheme using the same methods for both NVOCCs and non-NVOCCs, regardless of any given direct purchaser's line of business, buying methods, or size.  *See*, *e.g.*, *id*. ¶¶ 80-86 (similar bid-rigging methods used against non-NVOCC plaintiffs like Walgreens and named plaintiff CC 1); ¶ 87 (Non-Settling Defendants engaged in similar course of anticompetitive conduct against NVOCC plaintiff Yellow Freight and non-NVOCC plaintiff Pepsi Americas); ¶ 86-88 (cartel targeted large companies like absent class member DuPont).

Further, Crowley's protestations that "none of the seven named plaintiffs are among the top shippers in the trade" (Crowley Opp. at 7), and that there is no proof of the size of Plaintiffs' claims or the type of business they did (Crowley Surreply 18), are irrelevant to deciding whether the Class representatives share with the absent Class members the same legal claims and interest in pursuing those claims.  As one court noted, "[v]ariations in the level of market participation among plaintiffs and the class do not defeat typicality."  *In re Ready-Mixed Concrete Antitrust Litig.*, 2009 U.S. Dist. LEXIS 82043, at *51-52.  Moreover, Crowley's nebulous objection that

10

not enough information about the Class representatives exists is rendered moot by the detail provided in the Third Amended Complaint.  *Id*. ¶¶ 11-16.

### B.  Predominance - Rule 23(b)(3).

The predominance requirement is met here because the overwhelming weight of the issues involved focuses on common questions of liability and market-wide impact. "[P]redominance under Rule 23(b)(3) does not require an entire universe of common issues, but requires only 'a sufficient constellation' of them."  *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 70 (D. Mass. 2005) (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)).  The predominance element requires the Court to examine the elements of Plaintiffs' antitrust claims and determine whether common proof would predominate over individual issues. *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig*., 256 F.R.D. 82, 87 (D. Conn. 2009) ("to prevail in their motion for class certification, the plaintiffs must demonstrate that common questions of law or fact predominate over individual ones on the issues relevant to the three elements of an antitrust claim.").  The elements of an antitrust claim are (1) the existence of a conspiracy; (2) antitrust impact (or an injury of the kind the antitrust laws were meant to prevent); and (3) damages.  *Carbon Black*, 2005 WL 102966, at *15.

Proof of the first element, conspiracy, obviously would be common because it focuses on Defendants' conduct, not the Class members' individual circumstances.  *See In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 29 (D.D.C. 2001) ("As is true in many antitrust cases, the alleged violations of the antitrust laws at issue here respecting price fixing and monopolization relate 'solely to Defendants' conduct, and as such proof for these issues will not vary among class members.'" (quoting *In re Potash Antitrust Litig*., 159 F.R.D. 682, 694 (D. Minn. 1995)), cited with approval in *Relafen*, 221 F.R.D. at 275).  *See also Ins. Brokerage*, 2009

WL 2855855, at *19 (finding that issues raised by price-fixing claim are predominantly common because proof of illegal conduct "focus[es] on the conduct of the defendants."). Plaintiffs have alleged a wealth of common evidence that would prove liability, specifically the Complaint's discussion of guilty pleas entered by several individual Defendants. *See* Third Am. Compl. ¶¶ 99, 107, 108, 111-160.

Impact, the second element of Plaintiffs' claim, also involves common proof. Plaintiffs would show that Defendants' conspiracy raised prices throughout the market for Puerto Rican cabotage. *See* Pl. Mot. at 22. Just as in *Insurance Brokerage*, Plaintiffs' allegations of anti-competitive effects "focus on the effects of the defendants' challenged conduct," rather than individual stories of injury, and are thus common to the class. *See* 2009 WL 2855855, at *19 (noting that antitrust injury element involves common issues, "including whether the Zurich Defendants' actions reduced competition for insurance, whether the Zurich Defendants' actions resulted in a consolidation of the insurance industry, and whether the Zurich Defendants' actions produced an increase in the cost of premiums for commercial insurance."); *id.* at 28 ("The plaintiffs alleged that premiums throughout the insurance industry were artificially inflated …. Based on this theory, antitrust injury is susceptible to proof on a class-wide basis and involves common questions.").

Plaintiffs need not show impact individually for each Horizon Settlement Class member; rather, their allegations of a class-wide conspiracy that generally raised prices in the relevant market are sufficient to show "widespread injury to the class." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 523 (S.D.N.Y. 1996)*; In re Cardizem CD Antitrust Litig*., 200 F.R.D. 297, 321 (E.D. Mich. 2001). *See also Kohen v. Pacific Investment Mgmt. Co.*, No. 08-1075, 2009 WL 1919013, at *5 (7th Cir. July 7, 2009) ("[A] class will often include persons who

have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown.  Such a possibility or indeed inevitability does not preclude class certification, despite statements in some cases that it must be reasonably clear at the outset that all class members were injured by the defendant's conduct.") (citations omitted).  Further, as discussed above, Plaintiffs may make use of the presumption of impact to show that any Class member who purchased Puerto Rican cabotage services during the existence of the conspiracy paid an artificially inflated price.

Finally, the third element of Plaintiffs' claim, damages, also presents no obstacle to settlement class certification.  The parties have not yet retained expert witnesses to devise a damages methodology, but even assuming a common method of proving damages could not be found, it is well recognized in antitrust jurisprudence that "[p]redominance is not defeated by individual damages questions as long as liability is still subject to common proof."  *New Motor Vehicles*, 522 F.3d at 28.  Moreover, each Horizon Settlement Class member will have to substantiate its damages during the claims procedure, as it would during the claims portion of a trial on the merits.

The overwhelming weight of the parties' claims focuses on Defendants' illegal conspiracy and its market-wide effects.  To avoid this reality, the Non-Settling Defendants conjure up a fictitious requirement that all class members must have paid the same rates (Crowley Opp. at 28; Crowley Surreply at 16), and argue that there is no proof that the plaintiffs suffered *any* injury (Crowley Surreply at 16).  The first of these objections is irrelevant: courts considering an antitrust conspiracy "have generally found common issues to predominate despite individual differences in amounts paid, the method of payment, and potential knowledge of the

fraud." *In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. 75, 91 (D. Mass. 2005).
The second again conflates Plaintiffs' burdens on class certification and those at trial: on class
certification, Plaintiffs need not prove they actually suffered damages; rather, they need only
show that they would attempt to prove damages using class-wide methods.

## III.   CERTIFICATION OF THE SETTLEMENT CLASS WILL NOT PREJUDICE THE RIGHTS OF THE NON-SETTLING DEFENDANTS.

Further supporting certification of the Horizon Settlement Class is the fact that the rights
of the Non-Settling Defendants would not be prejudiced in any way.  As the Settlement
Agreement itself expressly provides, the Horizon Settlement Class "shall be certified for
settlement purposes only as to the Horizon Defendants."  Settlement Agreement at 3.  The Non-
Settling Defendants therefore remain free to oppose certification of any class with respect to the
claims asserted against them in this litigation.

<u>**CONCUSION**</u>

For the foregoing reasons, this Court should promptly enter an order granting preliminary
approval of the Settlement Agreement and certifying a settlement class. The Horizon Defendants
have submitted a Revised Proposed Order.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this __ day of September,
2009.

<u>/s/ John F. Nevares</u>
John F. Nevares (PR 130502)
John Nevares & Associates, PSC
P.O. Box 13667
San Juan, Puerto Rico 00908-3667
Tel. (787) 793-4906
Fax (787) 721-8820
Email: jfnevares@nevareslaw.com.

***Interim Liaison Counsel***

14

**HEINS MILLS & OLSON, P.L.C.**
Vincent J. Esades
310 Clifton Avenue
Minneapolis, MN 55403
Tel: (612) 338-4605
Fax: (612) 338-4692
vesades@heinsmills.com

**SALAS & CO., L.C.**
Camilo K. Salas, III
650 Poydras, Suite 1660
New Orleans, LA 70130
(Orleans Parish)
Tel: (504) 799-3080
Fax: (504) 799-3085
csalas@salaslaw.com

**LABATON SUCHAROW LLP**
Hollis L. Salzman
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
hsalzman@labaton.com

**KAPLAN FOX & KILSHEIMER, LLP**
Linda P. Nussbaum
850 Third Avenue, 14th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (2120 687-7714
lnussbaum@kaplanfox.com

**WHATLEY DRAKE & KALLAS, LLC**
Joe R. Whatley Jr.
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070
Fax: (212) 447-7077
jwhatley@wdklaw.com

**PIETRANTONI MENDEZ & ALVAREZ LLP**
Nestor M. Mendez-Gomez
Banco Popular Center, 19th Floor
209 Munoz Rivera Ave.
San Juan, PR 00918
Tel: (787) 274-1212
Fax: (787) 274-1470
nmendez@pmalaw.com

**BECNEL LAW FIRM, LLC**
Daniel E. Becnel, Jr.
106 W. Seventh St.
P.O. Box Drawer H
Reserve, LA 70084
Tel: (985) 535-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

*Interim Co-Lead Class Counsel*

Andres W. Lopez
**Law Offices of Andres W. Lopez**
207 Del Parque St. Third Floor
San Juan, PR 00912
Tel: 787-641-4541
Fax: 787-641-4544
andreswlopez@yahoo.com

Benjamin Brown
**Cohen Milstein Sellers & Toll, PLLC**
1100 New York Avenue, NW
Suite 500, West Tower
Washington, D.C. 20005
Tel: 202-408-4600
Fax: 202-408-4699
bbrown@cmht.com

Bryan Clobes
**Cafferty Faucher LLP**
1717 Arch Street, Suite 3610
Tel: 215-864-2800
Fax: 215-864-2810
bclobes@caffertyfaucher.com

16

Salvador Antonetti
**Fiddler, Gonzalez & Rodriguez**
PO Box 363507
San Juan, PR 00936-3507
Tel: 787-759-3209
Fax: 787-759-3109
santonetti@fgrlaw.com

Ruthanne Gordon
**Berger & Montague, PC**
1622 Locust St.
Philadelphia, PA 19103
Tel: 215-875-3000
Fax: 215-875-4604
rgordon@bm.net

Stephen A. Asher
**Weinstein Kitchenoff & Asher LLC**
1845 Walnut Street, Suite 110
Philadelphia, PA 19103
Tel: 215-545-7200
Fax: 215-545-6535
asher@wka-law.com

David C. Indiano-Vicic
**Indiano & Williams, PSC**
207 Del Parque Street
Third Floor
San Juan, PR 00912
Tel: 787-641-4545
Fax: 787-641-4544
david.indiano@indianowilliams.com

Richard Lockridge
**Lockridge Grindal Nauen P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: 612-339-6900
Fax: 612-339-0981
ralockridge@locklaw.com

Lawrence Silverman
**Silverman Cosgrove & Sammataro**
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2650
Miami, Florida 33131-1704
Tel: 305-377-1666
Fax: 305-377-1664
lsilverman@scs-legal.com

Stuart G. Gross
**Cotchett, Pitre & McCarthy**
840 Malcolm Road
Burlingame, CA 94010
Tel: 650-697-6000
Fax: 650-697-0577
sgross@cpmlegal.com

Eric Pérez Ochoa
**Adsuar Muniz Goyco Seda**
**& Perez-Ochoa, P.S.C.**
PO Box 70294
San Juan, PR 00936-8294
Tel: 787-756-9000
Fax: 787-756-9010
epo@amgprlaw.com

Eric M. Quetglas-Jordan
**Quetglas Law Office**
PO Box 16606
San Juan, PR 00908-6606
Tel: 787-722-7745
Fax: 787-725-3970
quetglaslaw@hotmail.com

Archie Lamb
**Law Offices of Archie Lamb, LLC**
P.O. Box 2088
Birmingham, AL 35201
Tel: 205-324-4644
Fax: 205-324-4649
alamb@archielamb.com

Andrés Guillermard
**Nachman Santiago & Guillemard**
1302 Ponce de León, Suite 302
San Juan, PR 00907
Tel: 787-724-1212
Fax: 787-725-1339

Kevin B. Love
**Criden & Love PA**
7301 SW 57th Court, Suite 515
South Miami, FL 33134
Tel: 305-357-9000
Fax: 305-357-9050
klove@cridenlove.com

***Plaintiffs' Steering Committee***